JUSTICE TRIEWEILER
dissenting.
I dissent from the majority opinion.
In support of its conclusion, the majority cites testimony unfavorable to the plaintiff which resulted from a hearing where she was effectively unrepresented and had no opportunity to present evidence of her own. In a peculiar form of logic, the majority then cites the conclusion drawn by the trial judge under these circumstances as conclusive proof that the result would have been the same even if plaintiff had been adequately represented. So much for traditional notions about the adversary system.
The defendant, who formerly represented the plaintiff at the hearing held to determine whether her parental rights should be terminated, took the Montana Bar Examination in February 1986, *190 and began practicing in August of the same year. He was appointed public defender on April 1, 1987, and represented plaintiff at the hearing in question on the following day. The hearing was held on a Monday. He received the file several days earlier, and met with his client on only one occasion, on the Thursday or Friday preceding the hearing. The situation defendant found himself in was unfair to either him or his client.
Defendant admitted in his deposition that he did not have time to go through the normal procedures to prepare for a termination of parental rights proceeding. He felt the only thing necessary for him to do was appear at the hearing.
Defendant conducted no pretrial discovery; he interviewed none of the State’s witnesses; he did not interview plaintiff’s child; and he made no effort to negotiate either a continuance or some other resolution of the underlying proceedings with the county attorney.
Defendant testified that his only preparation for the hearing at which plaintiff’s parental rights were terminated was to talk to his client on one occasion and review the file.
He testified that his plan was to simply call his client as a witness and hope that through her testimony he could persuade the court to give her one more chance to comply with the treatment plan. However, not even plaintiff was called to testify at her hearing.
Defendant agreed in his deposition that he had promised plaintiff he would ask the court to continue her hearing, and contends that he did so. However, Julie Macek, who reviewed the transcript of the termination hearing and was listed as an expert on defendant’s behalf, testified that defendant did not ask the court for a continuance at the outset of the hearing. Instead, he allowed the hearing to go forward and allowed the State’s unchallenged case to be presented. Then, in his closing argument, he asked the court to postpone a decision until his client had one more chance to comply with the treatment program. He made no mention of the fact that he was unprepared for trial, and that a continuance, therefore, was absolutely necessary. Obviously, under these circumstances, the District Court declined to postpone its decision.
After the hearing, the District Court terminated plaintiff’s parental rights based upon her failure to comply with the recommended treatment program. Instead of advising plaintiff of her right to file a motion for rehearing or appeal the District Court’s decision, defendant did nothing. He simply waited until she came in to pick up her file and then told her that the time for filing an appeal had passed. *191 He considered his services concluded when the District Judge made his decision to terminate plaintiff’s parental rights.
When asked in his deposition whether plaintiff received ineffective assistance of counsel in the proceeding to terminate rights, he declined to answer.
In her affidavit in opposition to defendant’s motion for summary judgment, plaintiff stated that in her initial interview with defendant she was told that he would be getting the hearing continued and that she would not need to prepare to testify or call witnesses. She testified that on the following Monday she attended the hearing with defendant, and to her surprise, no continuance was requested. She stated that she was not called to testify, and that other than her mother, neither were any other witnesses called on her behalf. She stated that since the hearing she has obtained a full and complete psychological evaluation which has established that she is a normal, healthy person who is fit to be a mother.
Nancy Pallares-Hernandez is a social worker employed by the Department of Family Services for the State of Montana. Plaintiff’s termination of parental rights case had been assigned to her in August 1986, and she was in charge of monitoring the treatment program at the time that plaintiff’s parental rights were terminated. She had the most direct involvement in assuring that the best interests of plaintiff’s son were served, and her recommendations would obviously have been important to the District Court’s decision. When asked what she would have recommended if she had known prior to the April 2, 1987, hearing that plaintiff was willing to complete the treatment program by getting a psychological evaluation, and that her attorney needed a continuance of the hearing to accomplish the evaluation, she gave the following answers:
Q. Excuse me, assuming that Billy would have said to you words to this effect —
A. Um-hum.
Q. “Nancy, I visited with Karren, and we’ve really had a heart-to-heart talk, and we really understand what you are trying to do, and we understand how important the psychological evaluation is, we are going to get it, would you continue the hearing while we go ahead and get it,” would you have then recommended a continuation of the proceedings?
A. Yes.
*192 The majority concedes that there was an attorney-client relationship between plaintiff and defendant and generously assumes that plaintiff would have been able to establish that defendant acted negligently. In fact, two separate attorneys licensed to practice in Montana testified by deposition that defendant’s representation of plaintiff was negligent.
However, the majority goes on to conclude that even though defendant may have been negligent, his negligence did not cause any damage to plaintiff because the District Court would not have continued her case, even if it had been requested to do so. The majority bases that conclusion on an affidavit submitted by the District Judge who decided this case. In his affidavit, he outlines the history of the case and then states that despite the argument presented at the final hearing, he was unpersuaded to postpone his decision, pending plaintiff’s compliance with the treatment program. However, being unwilling to postpone a decision after listening to a one-sided hearing about plaintiff’s unfitness to be a parent is not the same thing as considering a motion to continue by an attorney who was unprepared to proceed, and which would have been joined in by the case worker in charge of seeing that the child’s best interest was served. In fact, in State v. Timblin (1992), 254 Mont. 48, 834 R2d 927, where this same attorney moved for a continuance which was denied by the same District Judge, we reversed after concluding that the judge abused his discretion. We held that denial of the continuance in that case denied the fundamental fairness to which the defendant was constitutionally entitled. Certainly, this mother, whose right to parent her child was at stake, was entitled to no less fairness.
How can this majority disregard the District Court’s decision in Timblin, even though a proper motion and argument for continuance had been presented in that case, and then rely on irrelevant comments by the same District Judge in this case when, in fact, no proper motion had been presented and the basis for a continuance had not even been explained to the judge? Had that motion been presented and granted, and had plaintiff, in the interim, submitted to the psychological evaluation that she has now completed, it is clear that her parental rights would not have been terminated.
In reviewing a motion for summary judgment, this court must view the evidence in the light most favorable to the party opposing the motion. Payne Realty & Housing, Inc. v. First Security Bank (1991), 247 Mont. 374, 807 P.2d 177. The majority has done just the opposite.
*193 Summary judgment is not a proper tool for resolving disputed issues of fact. Flanagan v. Curran (1974), 164 Mont. 262, 521 P.2d 200. However, that is exactly what the District Court relied on in this case; and it did so with the majority’s approval.
Summary judgment should not be used as a substitute for trial when factual controversies exist. Farmers Ins. Exchange v. Janzer (1985), 215 Mont. 260, 697 P.2d 460. However, the majority, with increasing frequency, finds summary judgment an acceptable alternative to the inconvenience of jury trials.
A parent’s rights are among the most important rights in our society. No parent should have those rights terminated without due process. Due process necessarily requires effective representation. Where those rights were terminated without effective representation, plaintiff has sustained damage beyond the imagination of most people. She should not have been denied further rights in this proceeding without an opportunity to present her evidence to a jury, as was intended by Article II, § 26, of the Montana Constitution.
For these reasons, I dissent from the majority opinion. I would reverse the judgment of the District Court and remand this case for a trial by jury to resolve the factual issues which have been resolved by the majority on appeal.
JUSTICE GRAY joins in the foregoing dissent.